IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SCHWAYN D. BRADLEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION 1:19-01064-KD-N |
| | ) | |
| LOUIS DEJOY, Postmaster General, | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court on Defendant's motion for summary judgment (Docs. 35, 36), Plaintiff's Response (Docs. 41, 42), Defendant's Reply (Docs. 44, 45), Plaintiff's Sur-Reply (Doc. 46-1); and the Defendant's Objection (Doc. 47).[1]

**I.    Findings of Fact**[2]

Plaintiff Schwayn D. Bradley (Bradley) and USPS Postmaster Monica Fountain (Fountain) had a romantic relationship from 2005 until 2007.  (Doc. 35-1 at 7 (Dep. Bradley at 25)).  In 2011, Fountain, who was the Postmaster at the Evergreen, Alabama Post Office, notified Bradley that the USPS was hiring.  (Doc. 41-1 (Decltn. Bradley at ¶1)).  Bradley applied and, on February 11, 2012, was hired as a substitute mail carrier at the Monroeville Post Office.  (Id. at 1 (Decltn. Bradley at ¶3)).

Fountain soon started visiting Monroeville, to assist with training "and all relative matters about" Bradley, and "would call often while [Bradley] ... was at work to check on [him][.]"  (Id. at

---

[1] Defendant's objection is overruled.

[2] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

2 (Decltn. Bradley at ¶¶4-5). After a few months, Bradley wanted to work closer to home. (Id. (Decltn. Bradley at ¶6)). Bradley told Fountain and asked her to "keep [him] in mind" for any openings closer to his home. (Id. (Decltn. Bradley at ¶7)).

In addition to being the Postmaster of the Evergreen Post Office, Fountain provided supervision for the Castleberry, Alabama office and was responsible for that office. (Id. at 1 (Decltn. Bradley at ¶2); Doc. 35-2 at 11 (Dep. Fountain at 21)). In October 2012, with Fountain's help, Bradley was transferred to the Castleberry post office to serve as an auxiliary Rural Carrier. Bradley states that initially he was treated very favorably in that only two (2) months after the transfer, Bradley was given a regular full time route. (Doc. 41-1 at 2-3 (Decltn. Bradley at ¶¶7, 10)). Bradley asserts that this was an effort by Fountain to rekindle their prior relationship. (Id. at 3 (Decltn. Bradley at ¶¶11-15)).

In October 2012, the romantic relationship was rekindled between Fountain and Bradley. According to Bradley, this included a January 2013 hotel visit with marijuana to celebrate his birthday, sexual conversations, texting, and gifts of food and mixed drinks from Fountain. (Doc. 41-1 at 3-4 (Decltn. Bradley at ¶¶11-13, 17)). In the fall of 2013, Bradley "ended his romantic relationship with Fountain[]." (Id. at 4 (Decltn. Bradley at ¶¶18-22)). Bradley states that Fountain decided to retaliate for his decision to end the relationship; "I knew Fountain was starting to take revenge on me for not getting back in a relationship with her when she started to tak[e] adverse action against me." (Id. at 6 (Decltn. Bradley ¶31)).

The first alleged adverse action occurred in late Fall 2013, when Fountain questioned Bradley about unscheduled time off and threatened him with disciplinary counseling (investigative interview). (Id. at 5-6 (Decltn. Bradley at ¶¶26-28)). This occurred after Bradley had a sudden

2

medical emergency (on the day before Thanksgiving 2013) and then used the time off to go to the beach. (Id.)

The next alleged acts of retaliation occurred in February 2014, when Bradley asserts that Fountain told his wife about the affair, started calling him names, maligning his character, and vowing to get rid of him from the post office. (Id. at 6 (Decltn. Bradley at ¶34)). In support, Bradley provides two undated Facebook posts by Monica Fountain. (Id. at 7 (Decltn. Bradley at ¶35); Doc. 42-7).[3] The posts are interpreted by Bradley as referencing him (making her job harder, lying about her, "when they do something stupid, they want u to jeopardize ur job and let it slide[]") and threatening to fire him ("about to put him on blast", "U want me to be the bad guy....ok. I'll play that role for you[]"). (Doc. 42-7). According to Bradley,"[f]rom this point on Ms. Fountain continued to take adverse actions against me for things that other employees would do without suffering any discipline[,]"... and she did so using the postal service disciplinary procedures." (Doc. 41-1 at 7 (Decltn. Bradley at ¶38)).

In September of 2014, Bradley filed his first EEO charge (4G-350-0131-14 (the 2014 charge)) alleging, *inter alia*, that Fountain (and Wallace) had sexually harassed him and discriminated against him based on race and sex, and (in a supplemental filing) that Fountain was retaliating against him for the current EEO complaint. (Doc. 35-6).[4] On May 13, 2015, Bradley filed a second EEO charge alleging similar complaints. (4G-350-0090-15). (Doc. 35-9 at 2).

---

[3] Throughout his response, Bradley asserts that various witnesses, including his wife and sister, could testify to statements made by Fountain that support his narrative. However, Bradley's assertion is not evidence. Accordingly, the Court has not considered these statements.

[4] In his response, Bradley also asserts that in September 2014 he filed a grievance against Fountain for slander and that soon thereafter, she issued a 7 day suspension for "inappropriate conduct and failure to follow instructions." However, Bradley cites to no evidence in support of this contention and the Court has not located any evidence of record of a 7 day suspension in September 2014.

3

Neither charge was resolved in Bradley's favor. The 2014 charge was finally adjudicated in 2018 against Bradley. (Doc. 35-18). The 2015 charge was dismissed. (Doc. 35-13 at 12). Bradley did not appeal or file a civil action based on the 2014 or 2015 charge.

On October 1, 2015, Fountain issued Bradley a 7 day paper suspension for failing to follow instructions:

> On September 9, 2015 you had a phone conversation with Postmaster Monica Fountain. During that conversation you asked for copies of PS form 4240. Ms. Fountain advised that you need to submit a written request for that information. You responded, "Don't worry about it; I will just take pictures on my phone." Ms. Fountain then gave you specific instructions to not take any pictures of the 4240's again and instructed you to submit a Request for Information. You continued to take the pictures and refused to follow the instructions you were given.

(Doc. 35-7). Bradley challenged the action and, as a result of a union negotiated settlement, the charge was reduced to a "LOW" (letter of warning). (Doc. 42-15 at 1).

On October 9, 2015, Bradley submitted a signed statement to Fountain, alleging harassment and/or hostile work environment by her. (Doc. 35-4 at 9 (Fountain EEO Affidavit 4/21/17)). Internal investigations were conducted and a team questioned all the employees.[5] (Id.) The investigations did not sustain the allegations. (Id. at 9-10).

On November 4, 2015, Fountain issued Bradley a 14 day paper suspension for failing to follow instructions: "On September 26, 2015 you delivered a package to 351 Old 27 Road. You left the package on top of the mailbox in an unsecured location. The package fell off the mailbox and was found in the neighbor's field." (Doc. 35-8).[6] Bradley challenged the action and, as a result of a union negotiated settlement, the charge was reduced to a 7 day suspension. (Doc. 42-15 at 2).

---

[5] Neither party has indicated when this investigation occurred or what employees were questioned.

[6] This resulted in the contents being destroyed and the customer filing a complaint against Bradley. (Doc. 42-14 at 4-6).

On November 12, 2015, Bradley filed a complaint against Fountain with the District Manager of Post Office Operations. (Doc. 42-13 at 2). Bradley complained that Fountain intentionally delayed the mail by not requiring the substitute carrier to deliver all the mail. (Doc. 42-13). Bradley wrote a similar complaint to Fountain. (Doc. 42-13 at 1).

On January 22, 2016, Fountain placed Bradley on "emergency placement off-duty status." (Doc. 42-14 at 11-12). This resulted from statements he allegedly made on January 21, 2016, which caused concern for the safety of the Castleberry office employees. (Doc. 42-14 at 12). On February 26, 2016, Fountain issued the following 14 day paper suspension to Bradley, citing his failure to follow instructions, inappropriate conduct and violent and/or threatening behavior:

> On January 21, 2016 Postmaster, Monica Fountain, was talking with Rural Carrier, Sandy Weaver concerning the upcoming rural count. You stepped out of your case and stated "So, you're going to be laughing at me." Ms. Fountain explained that she was talking with another carrier and was not referring to you. You continued to mumble to yourself and then stated out loud to Ms. Fountain "that's why you married your cousin and had a baby for him." you (sic) also made statements that accused Ms. Fountain of having an affair with you and stated that she liked it. Additionally you went on to say that you had a video of Ms. Fountain in your basement. Ms. Fountain instructed you to stop making false statements and that she had not been in your basement. You then replied. "You will be, just wait on it, just wait on it, it's coming." Your behavior became aggressive, hostile, unstable, and confrontational and at that time Ms. Fountain instructed you to leave the Post Office until further instructions. You (sic) actions and statements were inappropriate for the work place and you are therefore charged accordingly.....

(Doc. 42-14 at 12-14).

On February 22, 2016, after he was placed on leave but before the formal suspension, Bradley filed a third EEO charge (4G-350-0024-16) (the 2016 charge), alleging that he was discriminated against because of his race, sex, age, and retaliated against based on prior EEO activity (the 2014 and 2015 EEO charges). Bradley alleged (as amended) that the discrimination and retaliation manifested as disciplinary actions (Oct. 1, 2015, Nov. 4, 2015, Nov. 5, 2015, Jan. 21, 2016, Jan. 29, 2016, and Feb. 26, 2016), a Dec. 15, 2015 denial of sick leave, no longer being

5

permitted to report to work early since Jan. 2016, and a March 3, 2016 requirement to deliver outdated circulars. (Doc. 35-13). This charge resolved against Bradley on May 9, 2017 (after his termination). (Id.). Bradley did not appeal to the EEOC or file a civil action.

In April 2016, Philana Barksdale (Barksdale) became the Supervisor of the Evergreen and Castleberry Post Offices, thus becoming Bradley's supervisor. (Doc. 35-3 (Decltn. Barksdale and EEO Affidavit 4/21/17 at 3-4)). Prior to this time, Barksdale worked in the Evergreen Post Office. Per Bradley's assertion, Barksdale and Fountain "were good friends" and Barksdale regularly carried messages from Fountain to Bradley. (Doc. 41-1 at 8 (Decltn. Bradley at ¶44)). Bradley fails to disclose what these messages were or how they are related to his contentions.

In May 2016, Fountain's direct supervision over Bradley ended. (Doc. 35-1 at 18 (Dep. Bradley at 91)). On June 25, 2016, after Fountain became the Brewton Postmaster, Wiggins became the Evergreen Postmaster. (Doc. 35-5 at 3 (Wiggins Decltn. and EEO Affidavit 4/25/17)). Prior to this time Wiggins was employed at the Monroeville Post Office.

In August 2016, Barksdale conducted a pre-disciplinary Investigative Interview with Bradley regarding undelivered mail. (Doc. 41-1 (Decltn. Bradley at ¶45)). On October 3, 2016, Barksdale issued Bradley a Notice of Removal. (Doc. 35-11 (10/3/16 Notice of Removal)). The grounds for his removal were failure to follow instructions resulting in the delay of mail, described as follows:

> On August 15, 2016, Management was made aware of a situation on your route after receiving multiple phone calls from residents regarding the status of their mail. The residents for these addresses had neither moved, nor had they placed their mail on vacation hold. It was discovered that these residents' mail had been placed on hold by you. The sole reason given by you for the mail being held was that the boxes were closed. Postmaster Wiggins instructed you to deliver mail to these addresses. Postmaster Wiggins reiterated that your instructions were to provide mail service to the addresses in question, and make the appropriate notations on your edit sheet.

On August 18, 2016, during a follow up phone call to the office, postmaster Wiggins inquired to the status of the addresses at the subject of the August 15 phone conversation. It was discovered that you had endorsed the mail for these addresses, as UTF/MGMT, ANI/MGMT, UND/MGMT, or undeliverable per management. These items had been placed with the Return to Sender Mail. This action resulted in the delay of First Class Letters, First Class parcels, Priority Parcels, Standard Parcels, as well as Standard Mail. You have failed to follow the instructions and you are charged accordingly.

(Id. at 2). The Notice of Removal also stated that Plaintiff's disciplinary history had been considered. (Id. at 4) These actions included an October 1, 2015 Letter of Warning, a November 4, 2015 seven day suspension, and a February 26, 2016 fourteen day suspension. (Id.)

As to *who*[7] made the decision to terminate Bradley:

- Per Barksdale, USPS "[m]anagement" made the decision to remove Bradley; she conducted an investigative interview concerning his delayed mail and completed the AAR for his discipline; she did not consult with anyone before making her decision; Fountain did not have any input into the decision; and Barksdale signed the removal to terminate him due to delaying first class and priority mail and because he had discipline on his record that was still active. (Doc. 35-3 at 5-7 (Barksdale Decltn. and EEO Affidavit 4/21/17)).

- Per Wiggins, the Evergreen Postmaster, she only "concurred" in the decision; "[m]anagement/[l]abor" made the decision; she consulted with management/labor on several occasions before concurring; Fountain did not have any input into the decision; and Bradley was terminated for failing to follow instructions resulting in mail delay and there was prior active discipline which led up to the removal. (Doc. 35-5 at 4-5 (Wiggins Decltn. and EEO Affidavit 4/25/17)).

- Per David Dilbeck, Manager of the Post Office Operations, his role in the termination decision was one of "concurrence" and he concurred because it was justified and Bradley's actions warranted removal. (Doc. 42-16 at 2-4 (Dilbeck EEO Affidavit 4/24/17). Dilbeck initially identified Fountain as the Postmaster he consulted with, the decision maker, and the one who signed the removal notice. Eleven days later, on May 5, 2017, Dilbeck corrected his statement to say that it

---

[7] Bradley speculates that Fountain was still involved in matters related to him and that Wiggins continued the harassment and discriminatory treatment at the behest of Fountain. However, Bradley presents insufficient evidence to create an issue of fact that Fountain continued to be involved in employment decisions concerning Bradley or to refute Wiggins and Barksdale statement to the contrary.

7

was Postmaster Wiggins rather than Fountain who was the decision maker and signed the removal notice. (Doc. 44-1).

- Per Fountain, then Brewton Postmaster, she had no input into the decision. (Doc. 35-4 at 4-6) (Fountain Decltn. and EEO Affidavit 4/20/17)).

As to *why* Bradley was terminated and *who* had knowledge of Bradley's prior EEO activity:

- Per Barksdale, Bradley's EEO activity was not a factor in the decision - he "was removed due to disciplinary reasons[]" and "due to delaying the mail and his previous discipline that was active." Barksdale states she was unaware of complainant's prior EEO activity.[8] (Doc. 35-3 at 5, 7, 13 (Barksdale Decltn. and EEO Affidavit 4/21/17)).

- Per Wiggins, she concurred in Bradley's removal because Bradley failed to follow instructions resulting in the delay of mail, Fountain had no input into the decision and Wiggins had no knowledge of Bradley's prior EEO activity. (Doc. 35-5 at 4, 6, 13 (Wiggins Decltn. and EEO Affidavit 4/25/17)).

- Per Dilbeck, he was aware of Bradley's EEO activity but it did not play a factor in his removal. (Doc. 42-16 at 1, 4 (Dilbeck EEO Affidavit 4/24/17).

- Per Fountain, she was aware of Bradley's prior EEO activity (Doc. 35-4 at 4 (Fountain Decltn. and EEO Affidavit 4/20/17)).

On January 23, 2017, Bradley filed a fourth EEO charge (4G-350-0036-17) alleging retaliation from October 2015 to the present date, for engaging in protected activity (prior EEO charges and verbal complaints), race discrimination, sex discrimination, and hostile work environment. (Doc. 35-14 (the 2017 charge)). On August 30, 2019, the EEOC granted the USPS's motion for a favorable decision without a hearing (*i.e.*, summary judgment). (Doc. 35-16; Doc. 35-19).

---

[8] There is a note in the final decision that Barksdale was named in the 2016 charge, although no charges specifically mention her. However, it is also noted that she was not investigated because Bradley failed to provide an affidavit to support his allegations. (Doc. 35-13 at 10, fn 1).

On December 9, 2019,[9] Bradley initiated this action against the United States Postal Services (USPS) Postmaster General (now Louis DeJoy) pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 2000e *et seq.*, alleging Title VII employment discrimination for retaliation and retaliatory hostile work environment (Counts One and Two).[10] (Doc. 1). As relief, Bradley seeks: a declaratory judgment that the USPS violated Title VII as alleged in each Count; reinstatement to his former position; back pay; benefits he would have been entitled to but for the unlawful termination; compensatory damages in the statutory amount of $300,000; and costs/expenses, including attorney's fees. (Id. at 5).

## II. Conclusions of Law

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c)(1)-(4) provides as follows:

> **(c) Procedures.**
> **(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[9] Bradley asserts that the action was filed within 90 days of receiving the Agency's Notice of Final Action. (Doc. 1 at 4). The USPS does not contest this assertion.

[10] Bradley initially asserted claims for race and sex discrimination. (Doc. 1). On summary judgment Bradley abandoned these claims: "Defendant is correct ... Plaintiff does waive any further proceedings on his claims of race and sex discrimination.....Plaintiff agrees that his two remaining claims ... are claims of retaliation and a retaliatory hostile work environment..." (Doc. 46-1 at 2). See also Doc. 41 at 18-19 at ¶23, 27). As such, it is **ORDERED** that Bradley's race and sex discrimination claims are **DISMISSED**.

9

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

**(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

**(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

The movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992).

**B.** **The Claims: Title VII Retaliation & Retaliatory Hostile Work Environment**

    **1.** **Retaliation**

Federal-sector employment discrimination is prohibited under 42 U.S.C. § 2000e-16(a), and provides, in relevant part, as follows:

> (a)......All personnel actions affecting employees ..... in the United States Postal Service and the Postal Regulatory Commission.....shall be made free from any discrimination based on race, color, religion, sex, or national origin.

"And retaliation for complaining about prohibited forms of discrimination is itself 'discrimination' within the meaning of § 2000e-16(a)." Babb v. Sec'y, Dep't of Veterans Affairs, 992 F.3d 1193, 1203 (11th Cir. Apr. 1, 2021). To establish a prima facia case of retaliation, Bradley must show that he:

> (1) engaged in statutorily protected activity; (2) suffered an adverse employment action; and (3) established a causal link between the protected activity and the adverse action. Bryant v. Jones, 575 F.3d 1281, 1307–08 (11th Cir. 2009). In the context of a retaliation claim, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68....(2006) (quotation marks omitted).

Malone v. U.S. Attorney General, 2021 WL 2134850, *6 (11th Cir. May 26, 2021) (per curiam) (unpublished).

Additionally, as set forth in Babb v. Wilkie, 140 S. Ct. 1168 (2020), for federal-sector employees to establish a Title VII retaliation claim, a plaintiff is no longer required to show his protected activity/discrimination was the "but-for" cause of the adverse employment action. See e.g., Tonkyro v. Sec'y, Dep't of Veterans Affairs, 995 F.3d 828, 833 and 835 (11th Cir. Apr. 20, 2021) (finding that Babb (*supra*) established that retaliation claims under Title VII's federal-sector provision are not subject to the but-for causation standard). See also Babb, 992 F.3d 1193 (same). Rather, if the protected characteristic played "*any part"* in the way a decision was made, the claim survives. Durr v. Sec'y, Dep't of Veterans Affairs, 843 Fed. Appx. 246, 247 (11th Cir. 2021) (per curiam) (unpublished) (citing Babb, 140 S. Ct. at 1174). The relevant question is whether Bradley's protected activity was the "but-for cause of *differential treatment*," not whether it was

the "but-for cause of *the ultimate decision*." Babb, 140 S. Ct. at 1174. See also Durr, 843 Fed. Appx. at 247.

Moreover, while courts have historically applied the McDonnell Douglas burden-shifting framework and the convincing-mosaic test to analyze retaliation claims, the Eleventh Circuit has recently held that those tests no longer apply to federal-sector discrimination claims post Babb v. Wilkie, *supra*. Durr, 843 Fed. Appx. at 247. As explained in Malone, 2021 WL 2134850, *4 (emphasis added):

> ...the text of Title VII states that employment decisions affecting federal employees must "be made free from any discrimination based on race," 42 U.S.C. § 2000e-16(a) (emphasis added). After the Supreme Court decided that the phrase "free from any discrimination" in the Age Discrimination in Employment Act did not require plaintiffs to show that discrimination was the but-for cause of an adverse employment decision, this Court held that the same reasoning applied to the identical text in 42 U.S.C. § 2000e-16(a). Babb, 992 F.3d at 1205. This means that **the McDonnell Douglas framework no longer applies to claims brought under 42 U.S.C. § 2000e-16(a). Specifically, the fact that there may be non-pretextual reasons for an adverse employment action "doesn't cancel out the presence, and the taint, of discriminatory reasons." Id. at 1204. Instead, the plaintiff need only show that race played a part in the way the decision was made, because an employment decision must be "untainted by ... discrimination." Id. at 1199** (quotation marks omitted)....

As such, the issue before the Court for Bradley's retaliation claim is whether he has established that his protected activity played "any part" in the decision to terminate him from federal employment. See Ingram v. Sec'y of the Army, 743 Fed. Appx. 914, 918 (11th Cir. 2018) (per curiam) (unpublished) (explaining elements of a retaliation claim).

There is no dispute that Bradley engaged in statutorily protected activity when he filed EEO charges, the latest relevant charge being his February 22, 2016 EEO charge. There is also no dispute that Bradley suffered an adverse employment action -- he was terminated on October 3,

2016.[11] The dispute is whether there is a causal link between Bradley's EEO activity and his termination, *i.e.*, whether there is sufficient evidence that Bradley's protected activity played "any part" in the decision to terminate him.

The USPS argues that Bradley has not presented sufficient evidence to show a causal link. First, the USPS asserts that the managers who decided to terminate Bradley (Wiggins and Barksdale) were not aware of Bradley's prior EEO activity when they decided to terminate him, therefore Bradley cannot establish a causal link. In support, USPS cites the EEO affidavits of Wiggins and Barksdale which explicitly state that they were not aware of Bradley's prior EEO activity.

In response to the this argument, Bradley argues that whether Wiggins and Barksdale knew about his prior EEO activity is a credibility issue that cannot be decided on summary judgment. Bradley states that because Wiggins and Barksdale were friends with Fountain, and Fountain knew of his EEO activity, that the Court should find that the evidence is sufficient to establish a material issue of fact for the jury. Bradley is mistaken. The burden is on Bradley to provide evidence establishing a causal link between his termination and his EEO activity. Bradley cannot rely on his own subjective inference that Wiggins and Barksdale knew of his EEO activity because they were friends with Fountain. Moreover, he has failed to cite to any evidence to rebut their sworn

---

[11] It appears Bradley generally claims that all the disciplinary actions taken against him between 2014-2016 constitute adverse employment actions. (Doc. 41 at 1-2). This appears to be an attempt to resurrect claims (regarding previous adverse actions which he alleged were discriminatory or in retaliation) that were resolved against him and to which no appeal or civil action was timely filed. To establish his retaliation claim, Bradley cannot rely on the adverse actions that occurred from October 2015 – February 26, 2016 (as listed in the complaint (Doc. 1 at 3)). This is because the specific claims that these disciplinary actions were discriminatory or in retaliation of his protected activity were resolved against Bradley, and he failed to file a timely appeal or a civil action on same. See 42 U.S.C. § 2000e-16(c) (To avoid dismissal of his claims as untimely, a federal employee must file a Title VII lawsuit within 90 days of receipt of notice of final action taken by a department, agency, or by the EEOC).

statements. The only **evidence** which might *arguably* support such an inference is the fact that Barksdale's name was included in the 2016 EEO charge. However, Bradley fails to address the fact that the investigative report on the 2016 charge indicates that Barksdale was not investigated nor is there any evidence she was interviewed.

Bradley also asserts that the prior EEO investigation was on-site, making "it virtually impossible that Barksdale would not have known about Bradley's previous EEO activity" (Doc. 41 at 18), but cites no evidence to support the claim that the EEO investigation was on-site.[12] Moreover, Wiggins did not begin work related to the Castleberry Post Office until June 2016. Barksdale worked in the Evergreen Post Office and the first indication that she had supervisory responsibility over the Castleberry Office was in April 20, 2016. The investigative report regarding the February 2016 EEO charge was submitted on May 31, 2016. (Doc. 35-9 at 3). There is no indication in the report that Barksdale or Wiggins were interviewed or contacted during the investigation.

Bradley has simply not provided evidence to support his belief that Wiggins and/or Barksdale were aware of his previous EEO activity. Instead, Bradley simply speculates, states facts not in evidence, or asks this Court to assume facts. This is insufficient to meet his burden to show a causal connection between his termination and his prior protected activity.

Moreover, even if the Court credited Bradley's speculation that Barksdale/Wiggins knew about the prior EEO charges and other protected activity, he has not established a causal link to his termination. Bradley speculates that Wiggins/Barksdale were acting at the behest of Fountain because of their friendship with her. However, if the retaliatory motive was personal animosity,

---

[12] The EEO investigative reports of record (2014 and 2016 EEO charges) only contain an investigative summary indicating the receipt of affidavits, there is no indication of in-person interviews. (Doc. 35-9 and Doc. 42-8).

such will not sustain a claim of retaliation based on protected activity. See Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1200 (11th Cir. 2001) ("Houldsworth claims, despite offering no evidence in this regard, that Lewis–Begin was motivated by her friendship with Klein's wife to criticize Houldsworth's job performance. Such a motivation, however, would be attributable to personal animosity and would not meet the Title VII requirement…[]").

Bradley also attempts to establish the causal link requirement by claiming that Fountain (who knew of his prior EEO activity) made the decision, or at least strongly influenced the decision, to terminate him. Bradley primarily supports this contention with more speculation and assumptions, *i.e.,* because Wiggins and Barksdale were friends and former co-workers with Fountain, they allowed Fountain to either make the decision or influence their decision to terminate Bradley. Again, this is insufficient to sustain his burden of presenting sufficient evidence of a causal link.

Bradley also tries to save his claim by pointing to David Dilbeck's, Manager of the Post Office Operations for Alabama, statement. Dilbeck's EEO affidavit asserts that Postmaster Fountain consulted with him about the termination, made the decision to terminate Bradley, and signed the removal notice. However, Dilbeck corrected his statement within days of signing the affidavit (and long before this civil action was filed) to indicate that it was Postmaster Wiggins not Fountain who made the decision or signed the notice.[13] (Doc. 44-1).

All of the evidence of record indicates that Fountain no longer had any authority to terminate Bradley and she did not sign the removal notice. And both Barksdale and Wiggins have averred that Fountain did not participate in the decision to terminate Bradley. Bradley has

---

[13] The evidence is uncontradicted that Barksdale signed the notice.

presented insufficient evidence to establish that the decision makers were aware of the prior EEO activity or that Fountain participated in the decision.

However, assuming *arguendo* that Fountain *was* involved in the decision to terminate Bradley, or that Wiggins and/or Barksdale were aware of the prior EEO activity, his prior EEO activity must have played some part in the way the termination decision was made -- and Bradley bears the burden of establishing such. Per Bradley, merely because Fountain had knowledge of his prior EEO activity, "[a] causal connect[ion] exists." (Doc. 41 at 25). The Court cannot agree.

As expressly detailed by Bradley, his termination was due to Fountain's *personal* retaliation against him for ending their romantic relationship. In sum, Bradley argues that Fountain engaged him in a "high stakes game of tit-for-tat" as retaliation "against him for his decision to end their relationship[:]"

> Mr. Bradley was concerned that Fountain would retaliate against him for his decision to end their relationship. ... And retaliate she did. As the record indicates, Mr. Bradley had no disciplinary issues in his capacity as rural mail carrier from the time he began service in 2012. Disciplinary actions against Mr. Bradley became a common occurrence in 2014, however, once he ended his personal relationship with Fountain.

(Doc. 41 at 35; Doc. 41-1 (Decltn. Bradley); Doc. 35-1 at 6 (Dep. Bradley at 24)).

On summary judgment, the Court views the facts in the light most favorable the non-movant, Bradley. However, even when doing so, Bradley's evidence is insufficient to create an issue of fact of *Title VII* retaliation by the USPS (via Fountain) in response to his prior EEO activity. The evidence establishes, at best, personal retaliation from a spurned former paramour who was also his boss (until five months before he was terminated). Retaliation in the form of a personal vendetta in response to a terminated romantic relationship does not equate to *Title VII retaliation* in response to a statutorily protected activity. "Personal animosity is not the equivalent of sex discrimination and is not proscribed by Title VII." McCollum v. Bolger, 794 F.2d 602, 610

(11th Cir. 1986); Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1200-1201 (11th Cir. 2001); Succar v. Dade Cty. School Bd., 229 F.3d 1343, 1345 (11th Cir. 2000) (per curiam) ("Title VII prohibits discrimination; it is not a shield against harsh treatment at the work place. Personal animosity is not the equivalent of sex discrimination....The plaintiff cannot turn a personal feud into a sex discrimination case..."); McCollum, 794 F.2d at 610 (same).

### 2. Retaliatory Hostile Work Environment

Bradley alleges that he was subjected to a hostile work environment in retaliation for his EEO activity. "[R]etaliatory hostile work environment claims, like retaliation claims based on discrete acts, prevail if the conduct complained of 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Tonkyro, 995 F.3d at 835-836 (citing Monaghan v. Worldpay US, Inc., 955 F.3d 855, 861-863 (11th Cir. 2020) (quoting Burlington Northern, 548 U.S. at 68)). Bradley must show 1) that the hostile work environment was because of his protected EEO activity; and 2) that the hostile acts complained of "well might have" dissuaded a reasonable worker from making or supporting a charge of discrimination.

In his Complaint Bradley references hostile acts including: his supervisor reprimanding him in the presence of his co-workers (Aug. 18, 2016), failing to properly compensate him for work (May 2016), forcing him to travel over an unsafe route while delivering mail (Sept. 2016), not being allowed to report to work early (beginning Jan. 2016), denying sick leave (Dec. 15, 2015) and subjecting him to unwarranted discipline (Oct. 1, 2015, Nov. 4-5, 2015, Jan. 21, 2016, Feb. 26, 2016). However, on summary judgment, Bradley fails to specifically and adequately address his claim of a retaliatory hostile work environment. Notably, Bradley makes no mention of the alleged hostile acts of being reprimanded in front of colleagues, failure to compensate properly, not being allowed to report to work early, or denial of sick leave on December 15, 2015. And as

17

for his allegation that he was forced to travel over unsafe roads to deliver mail, Bradley states that he "never received any communication from Barksdale to cease detouring because the bridge was repaired." (Doc. 41 at 21). This statement contradicts any assertion that he was forced to travel over an unsafe route (*i.e.*, apparently he continued to detour on the safe route). And no other evidence of any *other* unsafe route has been presented.

Even so, Bradley conclusorily argues that "the facts relevant to his retaliatory hostility claim are relatively straightforward." (Doc. 41 at 34). Bradley then proceeds to discuss Fountain's performance standards, implying they were different for him when compared to other employees. However, Bradley fails to develop this argument or cite to any evidence where he was treated differently than his co-workers for similar conduct. Bradley also does not make the necessary connection between any differential treatment and his prior EEO activity. Instead, Bradley avers that Fountain used "the postal service disciplinary procedures" to "get back at [him]" for ending the affair. (Doc. 41-1 at 7).

Bradley then references a sick leave denial on June 28, 2016 and states that "[i]nstances such as those above that may otherwise have been considered minor sleights by Defendant's [sic] Fountain and her post office associates are actually evidence of the high-stakes game of tit-for tat Fountain engaged Mr. Bradley in once he ended their romantic relationship in 2013." (Doc. 41 at 35). In Bradley's sur-reply he summarily states that Fountain penalized Bradley "due to the refusal of sexual favors as well as well as the retaliation for the complaints about the harassment due to the refusal of sexual favors."

Summarily, Bradley also argues that the history of unwarranted disciplinary actions by Fountain -- presumably from the day after Thanksgiving 2013 to the date of his termination in 2016 -- form the bases of his claim of retaliatory hostile work environment claim.

18

The USPS argues that the disciplinary actions cannot be relied upon to show a hostile work environment because each of these disciplinary actions, when challenged by Bradley, were determined by the EEO not to be based on any discriminatory or retaliatory motive. And since Bradley did not appeal these determinations or timely file a civil action, he cannot claim that they were unwarranted and rely on them to support his retaliatory hostile environment claim. The Court agrees. Bradley forfeited his right to assert in this action that the disciplinary actions were either unwarranted, biased, or retaliatory. Warranted discipline based on the acts of an employee in violation of an agency's rules (here the USPS'), cannot form the bases of a retaliatory hostile work environment. See generally, Sledge v. District of Columbia, 63 F.Supp.3d 1, 26 (D.D.C. 2014) (legitimately investigating an employee for suspected misconduct is generally not grounds for a hostile work environment claim).

In sum, Bradley fails to submit sufficient evidence to sustain his claim of a hostile work environment or to causally link the alleged hostile work environment conduct to his protected activity (EEO filings).

### III. Conclusion

Accordingly, it is **ORDERED** that: 1) Bradley's race and sex discrimination claims are **DISMISSED**; and 2) the Defendant's motion for summary judgment with regard to Bradley's retaliation claim and retaliatory hostile work environment claim is **GRANTED.**

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the **19th** day of **July 2021.**

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**